IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FILIA UIPI,

    Petitioner,                   No. CIV-04-1301 MCE KJM P

    vs.

DIANA BUTLER,

    Respondent.                <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a California prisoner proceeding pro se with an application for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges the fact that he was denied parole in 2001.

I. <u>Factual And Procedural Background</u>

        Petitioner is currently serving of a sentence of fifteen-years-to-life imprisonment in the California Department of Corrections and Rehabilitation (CDCR), following a conviction for second degree murder in 1992 in the Superior Court of Orange County. Answer, Ex. A.

/////

/////

/////

/////

1      Petitioner's first parole hearing was held on August 1, 2001.  Answer, Ex. D.  The

2 decision of the Board of Prison Terms reads as follows:

>   Sir, the Panel has reviewed all information received from the
>   public and relied on the following circumstances in concluding that
>   the prisoner is not suitable for parole and would pose an
>   unreasonable risk of danger to society or a threat to public safety if
>   released from prison.  Number one, the offense was carried out in
>   an especially cruel and callous manner.  The offense was carried
>   out in a manner which demonstrates an exceptionally callous
>   disregard for human suffering.  The motive for the crime is very
>   trivial in relation to the offense, if not inexplicable.  The
>   conclusions are drawn from the Statement of Facts wherein the
>   prisoner and his crime partner became involved in an altercation.
>   It's still somewhat unclear, although I think we straightened most
>   of it out today.  There was a, there was an argument of some type
>   at an AM-PM.  The inmate and his crime partner went home and
>   they retrieved a gun.  They came back.  Another individual, Mr.
>   Medrano, who had been at the AM-PM, apparently earlier in that
>   evening, drove up and Mr. Pea, who was the inmate's crime
>   partner, took out his gun and shot Mr. Medrano.  He was in his car
>   and his car went across the street and crashed into a building and
>   Mr. Medrano subsequently died of the gunshot wound to the head.
>   The inmate does have a minor record of prior offenses, that being
>   disturbing the peace and resisting an officer.  He also had an arrest
>   for burglary in which charges were never filed.  And he did have a
>   reckless driving incident in which he drove up on a Santa Ana
>   sidewalk, narrowly missing a couple of pedestrians.  The inmate
>   has failed to develop a marketable skill that can be put to use upon
>   release.  And we note that he's got a start on several vocations but
>   has not yet completed a vocation.  We do note that the inmate has
>   remained disciplinary-free during his incarceration and commend
>   him for that.  We also commend him for excellent work reports and
>   the chronos that note he goes to work and does a good job at his
>   work.  We also noted that the Counselor Elison wrote on 8/15 of
>   2000, that this inmate would pose a moderate degree of threat if
>   released from prison at this time.  Also the Panel notes that
>   responses to PC 3042 notices indicate an opposition to a finding of
>   parole suitability, specifically the District Attorney of Orange
>   County was here today and opposed the finding of suitability.  The
>   Panel does make the following findings, that the prisoner needs
>   therapy in order to face, discuss, understand and cope with stress in
>   a non-destructive manner.  Until progress is made, the prisoner
>   continues to be unpredictable and a threat to others.  This is a
>   unanimous decision and in a separate decision the Hearing Panel
>   finds that the prisoner has been convicted of murder and it is not
>   reasonable to expect that parole would be granted at a hearing
>   during the next three years.  The prisoner committed the offense in
>   an especially cruel manner.  Specifically, he and his crime partner,
>   after some verbal altercations in front of an AM-PM, went home,

1
2
3
4
5
6
7
8

> retrieved a gun, came back and shot Mr. Medrano, the victim in this case, fatally, in the head. The offense was carried out in a very dispassionate manner. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. And the motive for the crime was inexplicable or very trivial in relation to the offense. The prisoner does have a minor history of criminality, he was convicted of disturbing the peace and arrested for burglary for which he was not convicted. He also has somewhat of a unstable background in that both the disturbing the peace and the commitment offense involved a lifestyle of drinking beer, both times was a drinking related offense, and the prisoner has admitted some use of drugs in the past. The Panel recommends that the prisoner remain disciplinary-free and, if available, upgrade vocationally and educationally as always and, if available, participate in self-help and therapy programming. . .

Answer, Ex. D at 58-61.

Petitioner challenged his denial of parole at all three levels of the California court system. All of petitioner's challenges were rejected. The California Court of Appeal issued the last reasoned decision concerning petitioner's claim that his being denied parole was not supported by "some evidence." Answer, Ex. F. No court issued a reasoned decision concerning petitioner's claim that he was denied parole pursuant to a "no parole policy." The Court of Appeal found as follows:

> Uipi challenges the evidence supporting the finding he is unsuitable for parole and contends the Board's decision is based on vague, arbitrary and capricious reasons. He asserts the Board is not following the mandatory language in Penal Code [footnote omitted] section 3041 that provides the Board shall normally set a parole release date in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public.
>
> The Board must grant parole unless it determines that public safety requires a lengthier period of incarceration because of the gravity of the offense underlying the conviction. (§ 3041, subd. (b).) The Board considers the circumstances tending to establish unsuitability (Cal. Code of Regs., tit. 15 § 2042, subd. (c)) and suitability (§ 2402, subd. (d)) and exercised broad discretion in balancing the interests of the inmate and the public. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 655-657.) "[T]he judicial branch is authorized to review the factual basis of a decision of the Board denying parole in order to ensure that the decision comports with the requirements of due process of law, but that in conducting such a review, the court may inquire only whether some evidence

in the record before the Board supports the decision to deny parole, based upon the factors specified by statute and regulation." (*Id.* at p. 658.) "Only a modicum of evidence is required." (*Id.* at p. 677.) "It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole." (*Ibid.*)

The facts of the murder as stated at the hearing are: Uipi and his friend Mr. Pea were at an AM-PM market in the early morning of December 22, 1991. They fought with a group of Latino men. That group left and another group of Latino men arrived. Another struggle ensued. Someone fired shots at Uipi and the group of Latino men left. Uipi urged Pea to get a gun and they drove away. The second group of Latino men returned in a car to the market. Uipi and Pea returned in their car, Pea got out of the car and shot the driver of the other car in the head, killing him. Uipi was 19 years old and on probation at the time. At the hearing he stated he knew Pea had a gun, he thought Pea would use it for the purpose of revenge and he knew that it was possible that someone would be hurt.

The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole, so long as the Board does not fail to consider all other relevant factors. (*In re Ramirez* (2001) 94 Cal.App.4th 549, 569.) Although the parole authority is prohibited from adopting a blanket rule that automatically excludes parole for individuals who have been convicted of a particular type of offense, the authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant. (*In re Seabock* (1983) 140 Cal.App.3d 29, 36-37.) The Board must make a case-by-case ruling on parole suitability within the proportionality contemplated in section 3041, subdivision (a). (*In re Rosenkrantz, supra,* 29 Cal.4th 616, 683.)

The facts of Uipi's crime is some evidence to support the Board's finding that the killing was heinous, atrocious, or cruel because the motive for the crime, revenge for a physical confrontation with a group of strangers, is inexplicable or very trivial in relation to the offense. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1).) The record shows the Board considered Uipi's social history, his post-conviction behavior and accomplishments and his parole plans and commended him for his exemplary conduct and the great strides he has made in custody.

Answer, Ex. F at 1-2.

/////

/////

/////

II. <u>Standards For Habeas Relief</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA"). <u>See</u> <u>Ramirez v. Castro</u>, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); <u>see</u> also <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[1] Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). <u>Lockyer</u>, 538 U.S. at 71 (overruling <u>Van Tran v. Lindsey</u>, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by

/////

---

[1] In <u>Bell v. Jarvis</u>, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta." However, to the extent <u>Bell</u> stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees. Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief. <u>See</u> <u>Lockyer</u>, 538 U.S. at 70-71; <u>Ramirez</u>, 365 F.3d at 773-75.

5

§ 2254(d)). It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

/////

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

III. Parole In California

In Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 11 (1979), the United States Supreme Court found that an inmate has "no constitutional or inherent right" to parole, even when a state establishes a system of conditional release from confinement.  The Court recognized, however, that the structure of parole statutes might give rise to a liberty interest in parole that would, in turn, mean an inmate was entitled to certain procedural protections.  Id. at 14-15.  In Greenholtz, the Court found that the "mandatory language and the structure of the Nebraska statute at issue" created such a liberty interest.  Id. at 12; Board of Pardons v. Allen (Allen), 482 U.S. 369, 371 (1987).

In McQuillion v. Duncan, 306 F.3d 895 (9th Cir. 2002), the Ninth Circuit used the Greenholtz-Allen framework to determine whether California statutes created a liberty interest in parole.  The critical statute at issue in McQuillion is California Penal Code section 3041, which provides in relevant part:

> (a) In the case of any prisoner sentenced pursuant to any provision of law, other than [the determinate sentencing law], the Board of Prison Terms shall meet with each such inmate during the third year of incarceration for the purposes of reviewing the inmate's file, making recommendations, and documenting activities and conduct pertinent to granting or withholding post-conviction credit. One year prior to the inmate's minimum eligible parole release date a panel consisting of at least two commissioners of the Board of Prison Terms shall again meet with the inmate and shall normally set a parole release date as provided in Section 3041.5.[2] The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The board shall

---

[2] Cal. Penal Code § 3041.5 establishes procedural requirements for Board hearings.

> establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the prisoner was sentenced and other factors in mitigation or aggravation of the crime....
>
> (b) The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

The Ninth Circuit found that subdivision (b) was like the statutes in both Greenholtz and Allen:

> California's parole scheme gives rise to a cognizable liberty interest in release on parole. The scheme "'creates a presumption that parole release will be granted'" unless the statutorily defined determinations are made.

McQuillion, 306 F.3d at 901-02. Again in Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003), the Court of Appeals reiterated its holding that the California parole scheme created a liberty interest in parole, noting that "California Penal Code § 3041(b) controls" the resolution of the question because its "language clearly parallels the language" under consideration in Greenholtz and Allen. See also Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); In re Rosenkrantz, 29 Cal.4th 616, 654 (2002) (discussing § 3041(b), the California Supreme Court noted "parole applicants . . . have an expectation that they will be granted parole unless the Board finds . . . that they are unsuitable in light of the circumstances specified by statute and regulation").

The existence of a liberty interest means that a decision to deny parole must be supported by some evidence and not be otherwise arbitrary. Superintendent, Massachusetts Correctional Institute, Walpole v. Hill, 472 U.S. 445, 457 (1985); Jancsek v. Oregon Board of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987). The test is "not whether some evidence supports the *reasons* . . . for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety." In re Lee, 143 Cal.App.4th 1400, 1408 (2006) (emphasis in original). The evidence must have some indicia of reliability. Biggs, 334 F.3d at 915. The

"some evidence" requirement is a "minimally stringent" standard and does not require the court to reweigh the evidence or examine the entire record. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994); Hill, 472 U.S. at 455-56.

> [The] analysis is framed by the statutes and regulations governing parole suitability determinations . . . . [W]e must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" [] constituted an unreasonable application of the "some evidence standard" principle articulated in *Hill*.

Irons v. Carey, 479 F.3d 658, 662, as amended, ___ F. 3d ___ (9th Cir. July 13, 2007).

The Board's regulations for setting parole release dates are found in title 15 of the California Code of Regulations. Section 2401 of this title provides:

> A life prisoner shall be considered for parole for the first time at the initial parole consideration hearing scheduled as provided in Section 2268. A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public.
>
> In setting the parole date the panel shall consider the Sentencing Rules for the Superior Courts. The panel shall also consider the criteria and guidelines set forth in this article for determining the suitability for parole and the setting of parole dates, considering the number of victims of the crime for which the prisoner was sentenced and any other circumstances in mitigation or aggravation.
>
> The terms in this article are guidelines only. The suggested terms serve as the starting point for the board's consideration of each case on an individual basis. The board may establish a term above or below the guidelines when warranted and reasons are stated on the record. A prisoner shall not be released before the minimum eligible parole date.

15 Cal. Code Regs. § 2401.

/////

/////

Section 2402 provides:

(a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

(c) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a

victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

>(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
>
>(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

15 Cal. Code Regs. § 2402.

Once the Board determines that an inmate is suitable for parole, it proceeds to set a date for the inmate's release, based on numerous factors provided in sections 2403 through 2411. The paramount concern in determining parole suitability is public safety. In re Dannenberg, 34 Cal.4th 1061, 1080, 1084, 1085, 1086, cert. denied, 546 U.S. 844 (2005) ("the overriding statutory concern" is for public safety; purpose of the statutes is to "guarantee that the Board has fully addressed the public safety implications" of the release determination).

IV. Liberty Interest In Parole

Respondent argues that because petitioner has no liberty interest in parole, the denial of parole raises no federal question. The Ninth Circuit has found such an interest and, as noted above, has repeatedly reaffirmed this conclusion. Sass, 461 F.3d at 1128; McQuillion, 306 F.3d at 901. This court is bound by Ninth Circuit precedent.

V. Petitioner's Arguments

Petitioner presents several pages of argument concerning why he thinks he was unlawfully denied parole.[3] Two of petitioner's claims are cognizable in this action: 1) the decision of the parole board to deny petitioner parole was not supported by "some evidence;" and 2) petitioner was denied parole pursuant to a "no parole policy." See Mem. P. & A. In Supp. Pet. at 54-59, 84-93.

/////

---

[3] Petitioner requests that the court take judicial notice of some of the exhibits attached to his petition. Petitioner's request is not proper as the court takes judicial notice of facts, not exhibits. See Fed. R. Evid. 201. However, the court has considered all of petitioner's exhibits as respondent has not objected to such consideration.

A. <u>Some Evidence</u>

Based on a review of the record, the court finds that the state Court of Appeal's decision that there is "some evidence" to support denying petitioner parole is not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts. Specifically, the motive for petitioner's crime "is inexplicable or very trivial in relation to the offense." 15 Cal. Code Regs. § 2402(c)(1)(E). While there was some provocation, petitioner's egging on of his crime partner to retrieve the gun that killed Medrano was an unnecessary escalation of the conflict. Petitioner, who was in the car with Mr. Pea, could easily have urged leaving the scene of the conflict without returning. Cf. <u>In re Scott</u>, 119 Cal.App.4th 871, 892-93 (2004) ("reference in Board regulations to motives that are 'very trivial in relationship to the offense' requires comparisons; to fit the regulatory description, the motive must be materially less significant . . . than those which conventionally drive people to commit the offense in question, and therefore more indicative of a risk of danger to society if the prisoner is released"). This factor could have been properly used by the Board of Prison Terms at this first hearing to determine "that consideration of the public safety requires a more lengthy period of incarceration" for petitioner. Cal. Penal Code § 3041(b).[4]

The court notes, however, that the Board's conclusion that petitioner "has failed to develop a marketable skill that can be put to use upon release" is not supported by the record. Rather, the record indicates that petitioner is "skilled" at operating a punch press and driving a forklift, Pet., Ex. D at 2, that he has sheet metal worker skills and has completed a masonry program. <u>Id.</u>, Ex. P at 5.

---

[4] The degree to which the Board of Prison Terms may rely on unchanging factors, such as an inmate's commitment offense, in denying parole has been considered in some depth by federal courts in California. <u>See, e.g.</u>, <u>Biggs</u>, 334 F.3d at 916; <u>Sass</u>, 461 F.3d at 1128. Relatively recently, the Ninth Circuit has suggested that more reliance may be placed upon the commitment offense by the Board where, as in this case, the potential parolee has not served the minimum number of years dictated by his sentence. <u>Irons</u>, 479 F.3d at 658.

B. <u>No Parole Policy</u>

Petitioner argues that he was denied parole based on a policy of former California Governor Gray Davis that no person convicted of murder would ever be paroled. Mem. P. & A. In Supp. Pet. at 85, 88-89. The only "evidence" presented by petitioner in support of his argument is findings made by the California Court of Appeal in <u>In re Rosenkrantz</u>, 116 Cal.Rptr.2d 69 (2d Dist. 2002). Governor Davis had no direct role in petitioner's parole proceeding and petitioner fails to present any evidence demonstrating that the persons who presided over his parole hearing, even if appointed by Governor Davis, abided by a "no parole policy." Furthermore, the <u>Rosenkrantz</u> decision on which petitioner relies was reversed by the California Supreme Court, which found that Governor Davis did not have a no parole policy in view of the same evidence relied upon by petitioner. <u>Rosenkrantz</u>, 29 Cal.4th at 685-86.

VI. <u>Conclusion</u>

For all the foregoing reasons, the court will recommend that petitioner's application for a writ of habeas corpus be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

/////
/////
/////
/////

1 that failure to file objections within the specified time may waive the right to appeal the District
2 Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3 DATED: August 31, 2007.

_____
U.S. MAGISTRATE JUDGE

1
uipi1301.157